1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL EARL SCOTT,                    No.  2:12-cv-2326 KJM AC P

12              Plaintiff,

13        v.                                ORDER AND FINDINGS AND
                                            RECOMMENDATIONS
14   TIM VIRGA, et al.,

15              Defendants.

16

17        Plaintiff Michael Earl Scott is a state prisoner incarcerated at California State Prison

18   (CSP)-Solano under the authority of the California Department of Corrections and Rehabilitation

19   (CDCR).  Plaintiff proceeds pro se with this civil rights action against defendants Hamad and

20   Shannon on a claim that defendants violated his fundamental right of access to the courts.  This

21   action proceeds on plaintiff's third amended complaint.  ECF No. 59.

22        Pending before the court are the parties' cross-motions for summary judgment.  ECF Nos.

23   72, 73.  These matters are referred to the undersigned United States Magistrate Judge pursuant to

24   28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).  For the reasons that follow, this court

25   recommends that plaintiff's motion be denied, and defendants' motion be granted.

26   I.        Procedural History

27        On December 29, 2016, the court screened the third amended complaint and ordered

28   defendants Hamad and Shannon to respond.  ECF No. 63 at 7.  The undersigned also

1

1  recommended that claims against defendant Virga be dismissed without leave to amend.  Id.  The

2  district judge adopted the findings and recommendations in full.  ECF No. 66.  Defendants

3  answered the complaint (ECF No. 64), and after discovery closed, the parties filed their motions

4  for summary judgment (ECF No. 72, 73), which are now fully briefed (ECF Nos. 75, 76, 77).

5      II.    Plaintiff's Allegations

6      Plaintiff proceeds on a claim that defendants violated his constitutional right of access to

7  the courts, as follows.  Following the denial of his federal habeas corpus petition by the United

8  States District Court for the Northern District of California in case 3:06-cv-01147-JSW, and the

9  denial of a certificate of appealability by the Ninth Circuit Court of Appeals, plaintiff sought to

10  petition the United States Supreme Court for certiorari.  ECF No. 59 at 4, 6 ¶¶ 5, 7, 16.  Plaintiff

11  alleges that during the time he was attempting to prepare his petition for certiorari, the prison unit

12  in which he was housed was placed on lockdown/modified program, which prevented him from

13  visiting the law library to access materials to complete his petition.  Id. at 4-5, ¶¶ 6-12.  He further

14  alleges that he was not involved in the incidents that caused the lockdown, and that prison

15  officials were aware of his upcoming court deadline due to the inmate appeal forms, inmate

16  request-for-interview forms, and other correspondence that he submitted advising them of the

17  deadline.  Id. at 4, ¶¶ 6-7.  There were no alternative means to obtain law library access because

18  the paging system was inadequate and made it impossible to conduct legal research and, as a

19  result, he was unable to timely file a certiorari petition with the Supreme Court.  Id. at 4-5, ¶¶ 8,

20  13, 14.

21      Plaintiff alleges that as the supervisor of academic instruction, defendant Hamad handled

22  his appeal and had the authority to provide him with adequate physical access to the law library

23  and to address the deficiencies with the paging service.  Id. at 7, ¶¶ 21, 22.  As a correctional

24  captain, defendant Shannon was responsible for setting inmate access to the library during the

25  lockdown and could have provided that physical access to the law library be granted upon

26  verification of a court deadline.  Id. at 7-8, ¶ 23.

27      The issue plaintiff sought to present to the Supreme Court involved application of

28  Crawford v. Washington, 541 U.S. 36 (2004), to his case.  Id. at 6, ¶ 17.  In his federal habeas

petition, plaintiff argued that his rights under the Confrontation Clause were violated because the out-of-court statements that he was the murderer, made by three non-testifying witnesses, were admitted into evidence through the testimony of Sergeant Louis Cruz. Id. at 6, ¶ 19. Plaintiff claims that because his conviction was not finalized until after the decision in Crawford was issued, the district court was mistaken when it found that Crawford did not apply to his case. Id. at 6, ¶¶ 17, 18.

Plaintiff seeks declaratory relief, unspecified injunctive relief, and compensatory and punitive damages against defendants. Id. at 3, 10.

III.     Legal Standards for Motions for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). Under summary judgment practice, the moving party initially "bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." Davis v. United States, 854 F.3d 594, 598 (9th Cir. 2017) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When the non-moving party bears the burden of proof at trial, the moving party "need only demonstrate 'that there is an absence of evidence to support the nonmoving party's case.'" Shwarz v. United States, 234 F.3d 428, 436 (9th Cir. 2000) (quoting Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.  On the other hand,

> "[w]hen the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."

Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

4

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Id. at 587 (citation and internal quotation marks omitted).

On November 9, 2017, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 73-1; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

IV.     Right of Access to the Courts

Under the First and Fourteenth Amendments to the Constitution, state inmates have a "'fundamental constitutional right of access to the courts.'" Lewis v. Casey, 518 U.S. 343, 346 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 828 (1977)). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354 (citations omitted). Prisoners do not, however, have a constitutional right to a law library. Id. at 350-51 (citation omitted).

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). For backward-looking claims, plaintiff must identify the "non-frivolous, arguable underlying claim;" describe the official acts which frustrated his prior litigation; and "identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id. at 415 (citation and internal quotation marks omitted).

To have standing to bring this claim, plaintiff must allege he suffered an actual injury. Casey, 518 U.S. at 351-52; Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994). To succeed, a prisoner must have been denied the necessary tools to litigate a non-frivolous claim attacking a conviction, sentence, or conditions of confinement. Christopher, 536 U.S. at 415; Casey, 518 U.S. at 352-54 & n.3. Plaintiff need not show that he would have been successful on the merits of his claims, but only that they were not frivolous. Allen v. Sakai, 48 F.3d 1082, 1091 & n.12 (9th Cir. 1994). A claim is frivolous "if it lacks an arguable basis either in law or in fact." Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted). The Ninth Circuit has emphasized that

> [a] prisoner need not show, ex post, that he would have been successful on the merits had his claim been considered. To hold otherwise would permit prison officials to substitute their judgment for the courts' and to interfere with a prisoner's right to court access on the chance that the prisoner's claim would eventually be deemed frivolous.

Allen, 48 F.3d at 1091. To properly plead a denial of access to the courts claim, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." Christopher, 536 U.S. at 417-18 (footnote omitted).

V.     Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment on the ground that defendants violated his fundamental right of access to the courts by denying him physical access to the law library and instead referring him to an inadequate paging system. ECF No. 72 at 3-4. In his motion, plaintiff asserts that he "has shown that his claims are non-frivolous and that they were impeded by staff at C.S.P. Sac by not only continuously referring plaintiff to a useless paging system that a layman in law cannot possibly use." ECF No. 72 at 4.[1] However, as defendants point out, plaintiff's motion suffers from several fatal defects. ECF No. 75. First, the motion is not accompanied by a

---

[1] Quotations from plaintiff's filings include minor, unmarked spelling corrections,

separate statement of facts, as required by Local Rule 260(a).  Moreover, even if plaintiff's declaration were treated as his separate statement of facts, it makes only general allegations regarding his ability to physically access the law library.  ECF No. 72 at 5.  Plaintiff has failed to provide any supporting evidence, other than his declaration, that addresses the matters at issue in this case.  The documents plaintiff attaches to his motion are appeals related to his attempts to get copies in this case, rather than evidence of the denial of access in the underlying habeas petition.  Id. at 6-27.  Finally, the motion makes only conclusory assertions that plaintiff's rights were violated and his habeas petition was nonfrivolous, and makes no mention of any specific action by the defendants.  Id. at 1-5.  Plaintiff has failed to "come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted at trial," Miller, 454 F.3d at 987 (citation and internal quotation marks omitted), and his motion for summary judgment should therefore be denied.

VI.     Defendants' Motion for Summary Judgment

A.  Defendants' Arguments

Defendants move for summary judgment on the grounds that (1) plaintiff's claim that the district court erred in denying his habeas petition is frivolous, and thus there is no actual injury; (2) defendants did not cause plaintiff to be on the modified program which restricted his physical access to the law library; (3) plaintiff's lawsuit is barred under Heck v. Humphrey, 512 U.S. 477 (1994), because success on his claim would imply the invalidity of his sentence; (4) plaintiff failed to exhaust administrative remedies against Hamad; (5) defendants are entitled to qualified immunity; and (6) plaintiff hindered his own efforts to pursue his legal claim by failing to use the paging system.  ECF No. 73-2.

B.  Plaintiff's Arguments

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled in part on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

However, the unrepresented prisoner's choice to proceed without counsel "is less than voluntary," and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted). Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule. Id. at 1364 n.4 (citation omitted).

The court is mindful of the Ninth Circuit's overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted). Accordingly, though plaintiff has only partially complied with the rules of procedure, the court will consider the record before it in its entirety.

Plaintiff opposes defendants' motion on the grounds that defendants were acting under color of authority when they instituted the prison policies at issue, and that they had the authority to render or change decisions and enact prison regulations. ECF No. 76 at 1-3. He further argues that his claim is not frivolous or barred by Heck (id. at 4-5), that he exhausted his administrative remedies (id. at 6-7, 10-11), and that defendants are not entitled to qualified immunity (id. at 8-9).

C. Undisputed Material Facts

The following material facts are undisputed:

Plaintiff, an inmate in the custody of the CDCR, was transferred to CSP-Sacramento from Salinas Valley State Prison (SVSP) on September 29, 2010. Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 73-3) ¶ 1; Response to DSUF (ECF No. 76 at 12-21) ¶ 1. Plaintiff was transferred because of a threat on his life for his non-participation in a riot between Northern Hispanic and Black inmates at SVSP. DSUF ¶ 1; Response to DSUF ¶ 1.

When plaintiff arrived at CSP-Sacramento, he was initially placed on Facility B, and believes he was later moved to Facility C because Facility B was already filled to capacity. DSUF ¶ 2; Response to DSUF ¶ 2. Facility C was on modified program before plaintiff's arrival because of a riot between Northern Hispanic and Black inmates, which resulted in an attempted

8

murder of an inmate.  DSUF ¶ 5; Response to DSUF ¶ 5.

A modified program is a temporary, precautionary measure used to mitigate the potential for future violence and breaches of security.  DSUF ¶ 3; Response to DSUF ¶ 3.  Modified programs are implemented at the direction of executive-level officials to permit investigation into the causes and effects of serious incidents of inmate violence, while preserving the security of the institution and the safety of staff and inmates.  DSUF ¶ 3; Response to DSUF ¶ 3.  The areas of the institution affected by a modified program are continuously evaluated and are returned to normal programming as soon as it is determined safe to do so.  DSUF ¶ 3; Response to DSUF ¶ 3.  Usually, normal programming is resumed once tensions and the threat of more violence are reduced.  DSUF ¶ 3; Response to DSUF ¶ 3.

Several attempts were made to resume normal programming for Black and Hispanic inmates on Facility C, but this resulted in additional incidents within CSP-Sacramento, which made it necessary for executive-level administrators and officials to extend the length of the modified program.  DSUF ¶ 5; Response to DSUF ¶ 5.  These incidents included two additional inmate-on-inmate batteries involving weapons in October 2010, and another battery on an inmate with a weapon in December 2010.  DSUF ¶ 5; Response to DSUF ¶ 5.  To prevent additional incidents, Northern Hispanic and Black inmates could not be escorted at the same time.  DSUF ¶ 5; Response to DSUF ¶ 5.

All inmates in Blocks 5 through 8 of Facility C were on modified programming, and they were directed to use the paging system for library services.  DSUF ¶ 6; Response to DSUF ¶ 6.  The paging system is not a permanent replacement of inmates' ability to physically access the law library, but a temporary solution for those inmates placed on modified program.  DSUF ¶ 6; Response to DSUF ¶ 6.  Since plaintiff was housed on Block 7 of Facility C, he was required to use the paging system for library needs.  DSUF ¶ 6; Response to DSUF ¶ 6.

In using the paging system, inmates can access any published case through paging just as they can in the library.  DSUF ¶ 7; Response to DSUF ¶ 7.  Cases received through paging include other similar cases which can be paged out as well.  DSUF ¶ 7; Response to DSUF ¶ 7.  Inmates can Shepardize cases with the paging system and can page out three sets of documents,

each up to thirty pages in length, which can include any book available in the library (i.e.,

prisoners' handbooks, annotated statutes, codes, legal reference materials, and other legal

resources). DSUF ¶ 7; Response to DSUF ¶ 7. Paging allows extended access to the cases or

documents so inmates can read them more thoroughly, as opposed to use in the library where

inmates must take notes because they cannot take the resources out of the library. DSUF ¶ 7;

Response to DSUF ¶ 7. When paging is returned, inmates can borrow up to another three sets of

documents, and this process can repeat indefinitely. DSUF ¶ 7; Response to DSUF ¶ 7.

      Plaintiff requested physical access to the law library through the inmate appeals process

before attempting to use the paging system because he believed the paging system to be

inadequate because he did not have reference points to start from.[2] DSUF ¶ 8. Plaintiff was

"somewhat familiar" with his case, and he had copies of the briefs filed by his former counsel in

his direct appeal. Id. Those briefs contained case citations, but plaintiff did not use those cases

because his arguments had been unsuccessful when he presented them to the District Court. He

did not believe that the law that had been unsuccessful in the District Court would be helpful to

him in the Supreme Court. Id. Plaintiff filed documents with the court during the time his

physical access to the law library was restricted due to the modified program. DSUF ¶ 9;

Response to DSUF ¶ 9.

      The issue plaintiff sought to appeal to the Supreme Court involved violation of his

Confrontation Clause rights by the admission of three out-of-court statements that he was the

murderer, made by non-testifying declarants and presented through the testimony of a witness

during his criminal trial. DSUF ¶ 11; Response to DSUF ¶ 11. The out-of-court statements that

plaintiff challenges were not offered for the truth of the matter asserted, but were used to show

---

[2] Although plaintiff states that DSUF ¶ 8 is disputed, he does not actually dispute the facts
contained therein. Response to DSUF ¶ 8. Instead, he argues that requiring him to use the paging
system before allowing him to request physical access to the library was a waste of time and
would be equivalent to sabotaging his own case because the only starting point he had was the
case law that had already been unsuccessful in supporting his arguments in the District Court. Id.
During his deposition, which defendants rely on, plaintiff also explicitly stated that he did not try
to use the paging system before requesting physical access to the law library. ECF No. 73-6 at
17. Accordingly, the facts in DSUF ¶ 8 are deemed undisputed.

plaintiff had motive to dissuade the witnesses from testifying in court.  DSUF ¶ 12; Response to DSUF ¶ 12.  The jury in plaintiff's criminal trial was instructed not to consider the out-of-court statements for their truth, but only for the limited purpose of showing that he knew the non-testifying witnesses made those statements and that this was his reason for trying to dissuade them from testifying in court.  DSUF ¶ 13; Response to DSUF ¶ 13.

Plaintiff had ninety days from the Ninth Circuit's November 1, 2010 denial of a certificate of appealability to file a petition for writ of certiorari in the United States Supreme Court.  DSUF ¶ 14; Response to DSUF ¶ 14.  On February 23, 2010, plaintiff wrote a letter to the clerk of the Supreme Court requesting an extension of time.  DSUF ¶ 14; Response to DSUF ¶ 14.  The request was denied.  DSUF ¶ 14; Response to DSUF ¶ 14.  Plaintiff did not need physical access to the law library to write the letter to the clerk because its only purpose was to ask for an extension of time and provide the circumstances explaining the need for additional time.  DSUF ¶ 15; Response to DSUF ¶ 15.  It is unclear when plaintiff was released from modified programming, but it appears that he was released sometime after his deadline to file a petition for writ of certiorari had passed.[3]  ECF No. 1 at 41-42; ECF No. 73-8 at 43.

    D.  Discussion

        i.  Actual Injury

            a.  Non-Frivolous Claim

Defendants argue that plaintiff cannot establish actual injury because his underlying claim, that the district court erred in denying his habeas petition, is frivolous.  ECF No. 73-2 at 10-12.  Plaintiff sought Supreme Court review of his claim that Crawford v. Washington, 541 U.S. 36 (2004), applied to his criminal case.  ECF No. 59 at 6, ¶ 17.  Plaintiff wished to argue that his confrontation rights were violated by out-of-court statements that he was the murderer, made

_____

[3]  Defendants cite to plaintiff's deposition as support for the fact that "Plaintiff believes he was released from modified programming in January 2011," and plaintiff does not dispute this fact.  DSUF ¶ 10; Response to DSUF ¶ 10.  However, at another point in his deposition plaintiff stated that he believed he was released from modified programming in January or February 2011 (cite depo), and plaintiff's request for additional time to file a petition for writ of certiorari (ECF No. 1 at 41-43) and the second level response to Appeal #SAC-E-10-01547 both indicate that he was still on modified programming in February 2011 (ECF No. 73-8 at 43).

by three non-testifying witnesses, and admitted into evidence through Sergeant Louis Cruz's testimony. Id. at 6, ¶ 19. Although plaintiff's allegations were sufficient at the screening stage to indicate the potential existence of a non-frivolous claim, defendants have presented additional evidence of record that demonstrates that plaintiff's Crawford claim was actually frivolous.

The undisputed facts show that the statements at issue were not introduced to prove the truth of the matter asserted, but were instead offered to show plaintiff's motive in dissuading the individuals who made the statements from testifying. DUSF ¶ 13; Response to DSUF ¶ 13. They further show that the jury was specifically instructed not to consider the statements for their truth and to only consider them for the limited purpose of showing motive. DSUF ¶ 14; Response to DSUF ¶ 14. Defendants have also requested that the court take judicial notice of various portions of the record in plaintiff's habeas proceedings which shed further light on plaintiff's claims. ECF No. 73-9. This request will be granted. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citation and internal quotation marks omitted)); Fed. R. Evid. 201(b)(2) (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

In addition to murder, plaintiff was tried on four counts of attempting to dissuade a witness. ECF No. 73-9 at 5-6. The statements that plaintiff was the murderer were admitted into evidence to demonstrate motive on the dissuasion charges, and only after the trial court provided the following special jury instruction:

> At this time certain evidence is being produced in this trial concerning statements made by witnesses. You are instructed that this evidence is not being allowed into evidence for the truth of the statements. The evidence is being allowed into evidence for the limited purpose of showing, if it does, the specific intent or mental state of the defendant, Michael Scott. You cannot and must not consider it for any other purpose.

Id. at 11 n.2. In denying plaintiff's Confrontation Clause claim in federal habeas, the district court found that Crawford did not apply because it had not yet been decided, and that his claims were governed instead by Ohio v. Roberts, 448 U.S. 56 (1980). Id. at 14. However, the court

1  ultimately held that "[t]here was no Confrontation Clause violation under either <u>Crawford</u> or

2  <u>Roberts</u> . . . because the statements of the unavailable witnesses were not being admitted for their

3  truth, therefore they were not hearsay." <u>Id.</u> at 15.

4       Even if the court assumes that plaintiff is correct that <u>Crawford</u> was the controlling case

5  law at the time of his appeal, the claim is still frivolous.  The <u>Crawford</u> court held that the use at

6  trial of testimonial out-of-court statements made to police by an unavailable witness violated a

7  criminal defendant's Sixth Amendment right to confront witnesses against him.  <u>Crawford</u>, 541

8  U.S. at 52-53.  The court explained that "[w]here testimonial evidence is at issue . . . the Sixth

9  Amendment demands what the common law required: unavailability and a prior opportunity for

10 cross-examination."  <u>Id.</u> at 68.  However, the court also explicitly noted that "[t]he Clause . . .

11 does not bar the use of testimonial statements for purposes other than establishing the truth of the

12 matter asserted."  <u>Id.</u> at 59 n.9 (citing <u>Tennessee v. Street</u>, 471 U.S. 409, 414 (1985)).  In coming

13 to this conclusion, the <u>Crawford</u> court relied on <u>Tennessee v. Street</u>, which bears some factual

14 similarity to plaintiff's case and further demonstrates the frivolity of his claim.

15      In <u>Street</u>, the prosecution relied on a detailed confession made by the defendant regarding

16 his participation in a burglary and murder.  <u>Street</u>, 471 U.S. at 411.  Street claimed that the

17 confession was coerced, and that the sheriff had read him the confession of Clifford Peele, who

18 had also participated in the crimes, and "directed him to say the same thing."  <u>Id.</u>  In order to

19 rebut Street's claim, the prosecution had the sheriff read Peele's confession to the jury to

20 demonstrate the difference between the two confessions, such as the fact that Peele's confession

21 "portrayed respondent as an active participant in [the victim's] hanging, and [Street's] statement

22 contained factual details that were not found in Peele's confession."  <u>Id.</u> at 412.  The jury was

23 instructed that Peele's confession could "be considered by [them] for rebutable [sic] purposes

24 only, and that [they were] not to consider the truthfulness of the statement in any way

25 whatsoever."  <u>Id.</u> (second alteration in original) (citation and internal quotation marks omitted).

26 The court held that "[t]he *nonhearsay* aspect of Peele's confession—not to prove what happened

27 at the murder scene but to prove what happened when [Street] confessed—raises no

28 Confrontation Clause concerns."  <u>Id.</u> at 414 (emphasis in original).  In plaintiff's case, as in

1  Street, the testimonial statements regarding plaintiff's involvement in a murder were not used to

2  show that he had committed the murder.  Instead, they were used for the non-hearsay purpose of

3  showing his motive to dissuade the witnesses from testifying.  Because the statements in

4  plaintiff's case were used for a non-hearsay purpose, like the statements in Street, they fail to

5  raise Confrontation Clause concerns.

6       Testimonial statements that are used for a purpose other than to prove the truth of the

7  matter asserted are not barred by the Confrontation Clause, and defendants have shown that the

8  statements plaintiff sought to challenge fell squarely within this rule.

9       In opposing the motion for summary judgment, plaintiff agrees it is undisputed that the

10  statements were offered to show his motive in dissuading the witnesses and that a limiting

11  instruction was given.  Response to DSUF ¶¶ 12-13.  However, he argues that the statements

12  were testimonial within the meaning of Davis v. Washington and Hammon v. Indiana, 547 U.S.

13  813 (2006).  ECF No. 76 at 10-11.  He further argues that "[t]hey were testimonial and therefore

14  inadmissiable [sic].  So the jury instruction for them not use the statements as evidence of

15  Abraham's murder were completely ignored."  Id. at 11.

16       Plaintiff has failed to demonstrate a dispute of material fact as to the non-frivolity of the

17  claim he sought to bring before the Supreme Court.  First, his reliance on Davis and Hammon is

18  misplaced.  Whether the statements at issue in those cases were testimonial was crucial *because*

19  the statements were used to prove the truth of the matters asserted.[4]  Davis, 547 U.S. at 817-21.

20  In this case, there is no dispute that the non-testifying witnesses' statements that plaintiff was the

21  murderer were testimonial.  However, they were not offered to prove that plaintiff was the

22  murderer, and therefore did not implicate the Confrontation Clause.

23       Plaintiff  cannot avoid this result by arguing that because the statements were testimonial,

24  the instruction not to use them as evidence that plaintiff was the murderer was ignored.  "The

25  assumption that jurors are able to follow the court's instructions fully applies when rights

26

27  [4]  The Supreme Court considered Davis and Hammon in tandem.  In both cases the prosecution
   used statements from the non-testifying victim that the defendant was the one who assaulted her
28  as proof that the defendant had assaulted the victim.  Davis, 547 U.S. at 817-21.

14

guaranteed by the Confrontation Clause are at issue." <u>Street</u>, 471 U.S. at 415 n.6 (citing <u>Frazier v. Cupp</u>, 394 U.S. 731, 735 (1969)). However, even if the court were to assume for the sake of argument that plaintiff is correct, and that the jury was unable to follow the limiting instruction and the statements were inadmissible hearsay that constituted reversible error, summary judgment should still be granted for the reasons addressed below.

### b. Ability to Access the Court

"[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." <u>Casey</u>, 518 U.S. at 351. "[T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." <u>Id.</u>

Defendants argue that plaintiff's own actions are what hindered his efforts to pursue his claim. ECF No. 73-2 at 20-21. The undisputed facts establish that a paging system was available for obtaining legal materials, including handbooks and reference materials; that plaintiff did not attempt to use it; and that he instead insisted that he required physical access to the law library. DSUF ¶¶ 7-8; Response to DSUF ¶ 7. Rather than disputing these facts, plaintiff instead claims that he could not obtain what he needed through the paging system because all he had to use as a starting point were the cases that had already failed him in the district court and court of appeals. Response to DSUF ¶ 8. However, because plaintiff did not attempt to use the paging system, any alleged shortcomings with the system are entirely theoretical and plaintiff is unable to show that he suffered an actual injury as a result of being required to use the paging system during the modified program.

Plaintiff has also admitted that he was able to file documents with the court during the time his physical access to the library was restricted, and that he did not require physical access to the law library to draft and submit his request to the Supreme Court for an extension of time. DSUF ¶¶ 9, 14-15; Response to DSUF ¶¶ 9, 14-15. The complaint and plaintiff's administrative appeal both further establish that he was aware that he had ninety days to petition for writ of certiorari. ECF No. 59 at 4, ¶ 8; ECF No. 73-8 at 11.) However, plaintiff did not request an

extension of time until after the deadline had passed.  DSUF ¶ 14; Response to DSUF ¶ 14.

Defendants have succeeded in showing that plaintiff could have filed a request for extension of

time prior to the expiration of his deadline to petition for certiorari, and plaintiff has failed to

demonstrate that any triable fact as to that issue exists.  Because plaintiff was capable of

requesting an extension of time but failed to do so, he cannot show that he suffered any actual

injury.  Vandleft, 31 F.3d at 798 (finding no actual injury where inmate did not request an

extension of time to file his reply or seek reconsideration based on inability to file a reply); see

also Miller v. Archie, No. 96-15500, 116 F.3d 484 (Table), 1997 WL 305926, at *1, 1997 U.S.

App. LEXIS 13259, at *3-4 (9th Cir. June 5, 1997) (citing Vandleft, 31 F.3d at 798 ) (no actual

injury where plaintiff claimed denial of access to law library prevented timely filing of petition

for certiorari but he failed to provide evidence that he sought an extension of time to file petition).

    ii.  Causation

       In order to successfully bring an access to the courts claim, an incarcerated plaintiff "must

show that official acts or omissions 'hindered his efforts to pursue a [non-frivolous] legal claim.'"

Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009) (alteration in original) (quoting Casey, 518

U.S. at 351).  In the instant case, therefore, plaintiff must lay out how Shannon and Hamad's acts

or omissions led to his lost litigation opportunity.  Regarding causation, defendants contend that

they did not put plaintiff on the modified program, and had no control or authority to release him

from the program or otherwise change the program restrictions.  ECF No. 73-2 at 12-13.  They

assert that as a correctional captain, Shannon's duties included informing inmates and staff of the

modified program through status reports and enforcing prison programming, but all restrictions

"were directives from executive-level officials."  Id. at 12 (citing Shannon Decl. ¶¶ 4, 6-7.)  They

further argue that neither defendant had control over who was on modified program and "[t]hey

also did not have the authority to release any inmate from the modified program or change the

modified program restrictions."  Id. at 13 (citing Shannon Decl. ¶¶ 4, 9; Hamad Decl. ¶ 7).

       In opposition to defendants' motion for summary judgment, plaintiff has failed to allege

facts showing how Shannon and Hamad hindered his efforts to access the prison law library.

While he strongly disputes Shannon and Hamad's declarations that they had no power to grant

exceptions to the modified program, plaintiff does not provide any documentation or point to any evidence which would competently dispute Shannon and Hamad's assertions that they lacked such authority. ECF No. 76 at 1-3. With respect to Shannon, plaintiff argues that Shannon did in fact have authority to make changes to the modified program and points to "all of the memorandums that bear his signature." Id. at 2. Although plaintiff does not specifically identify the memoranda he is referring to, he presumably means the memoranda that outlined the restrictions for the modified program. ECF No. 73-8 at 44-47. As to Hamad's authority, plaintiff argues that she must have had the necessary authority because she was the academic supervisor and was responsible for rendering decisions on appeals. ECF No. 76 at 2. He argues that "to suggest as the defendants are that they were just the front man and woman for the executives in the institution is either a lie or a ploy to minimize their blatant indifference." Id. He then references California Code of Regulations Title 15, sections 3122 and 3123 as "precedent set for inmates to retain physical access at times like the one before this court." Id. at 3.

However, in referencing the program status reports, Shannon's declaration provides that "[a]ll restrictions imposed by the facility captain were directives from executive-level officials," ECF No. 73-7 at 3, ¶ 7, and Hamad's declaration avers that she had no control or authority to grant inmates physical access to the library during a modified program, which was a decision for custody staff, ECF No. 73-4 at 3, ¶ 8. Moreover, § 3122 makes no reference to library access during a modified program, and § 3123 explicitly states that inmates can be restricted to law library paging in "extraordinary circumstances" that include a prison lockdown. Cal. Code Regs. tit. 15, §§ 3122, 3123 (2010).

As detailed above, the party opposing a motion for summary judgment may not depend solely upon allegations, but must provide and cite to particular parts of materials in the record. Fed. R. Civ. P. 56(c). Plaintiff has not pointed to anything in the record to indicate that Hamad or Shannon had the authority either to change prison policy regarding library access during the modified program or exempt plaintiff from the modified program. His conclusory assertions that defendants must be lying are insufficient to overcome their declarations regarding their relevant authority, and he has therefore failed to establish a genuine dispute of material fact exists.

VII.    Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment should be denied and defendants' motion for summary judgment should be granted.  Because there is no triable issue of fact as to whether defendants violated plaintiff's right of access to the courts, the court declines to consider whether plaintiff's claims are barred by Heck, whether plaintiff had exhausted his administrative remedies against Hamad, or whether defendants are entitled to qualified immunity.

VIII.    Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that your motion for summary judgment be denied because it does not have a statement of facts, it does not make any specific claims against the defendants, and it does not show that a verdict in your favor would be required if you presented your evidence at trial.

Defendants' motion for summary judgment has shown that your underlying claim was frivolous, and even if it was not frivolous, you were not actually denied access to the court and Shannon and Hamad did not have authority to give you access to the library.  Because you have not presented evidence showing the existence of any material factual disputes on these issues, it is being recommended that defendants' motion be granted.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that defendant's request for judicial notice (ECF No. 73-9) is granted.

IT IS FURTHER RECOMMENDED that:

1.  Plaintiff's motion for summary judgment (ECF No. 72) be denied.

2.  Defendants' motion for summary judgment (ECF No. 73) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 18, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE